UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL ACTION NO. 3:21-cr-00018-GFVT-EBA-2

UNITED STATES OF AMERICA,                                              PLAINTIFF,

V.                   **REPORT AND RECOMMENDATION**

HILLARY KUBWA,                                                     DEFENDANT.

*** *** *** ***

### INTRODUCTION

This matter has been referred to the undersigned for the purpose of issuing a report and recommendation upon the Defendant's pending Motion to Suppress pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 50 at pg. 3]. Having reviewed the parties' briefs, the search warrant, and the affidavit in support of the application for the search warrant, the undersigned **RECOMMENDS** that the Defendant's Motion to Suppress, [R. 49.], be **DENIED**.

### FACTS & PROCEDURAL HISTORY

On August 19, 2021, a grand jury indicted the Defendant, Hillary Kubwa, on charges of conspiracy to defraud the United States in violation of 18 U.S.C. § 286 and fraud with identification documents in violation of 18 U.S.C. § 1028A. [R. 1]. The instant motion seeks to suppress evidence gained from the search of the Defendant's email address pursuant to a search warrant signed by Magistrate Judge Matthew A. Stinnett. [R. 49].

The search warrant is supported by an affidavit submitted by Special Agent Brandon Welch of the Internal Revenue Service's ("IRS") Criminal Investigation Unit. [Aff. at pg. 1, ¶ 1]. The affidavit details a tax fraud and identity theft scheme allegedly perpetuated by the co-defendants.

In short, the affidavit details the method by which the co-defendants stole the identity of several individuals, after which they were able to create fraudulent EFINs under the guise of the individuals whose identity had been stolen. The fraudulent EFINs were then used to file false tax returns for individuals whose W-2 information were stolen after a number of companies fell prey to phishing scams. In total, the affidavit sought to demonstrate probable cause for the search and seizure of six email addresses associated with the scheme; however, the instant motion only seeks to suppress evidence associated with Defendant Hillary Kubwa's personal email address. [R. 49]. Accordingly, the facts detailed here will be focused on Kubwa's association to the scheme.

Kubwa is tied to the tax fraud and identity theft scheme through two factors. The first is Kubwa's relationship with co-defendant Stephen Olewe and Juliet Otiende. The second is a tip from a man named Michael Essien who claims that Kubwa is financing the tax scam. The Court will discuss each in turn.

**A. The association between Kubwa, Otiende, and Olewe.**

At the outset, the Court will note that there is significant evidence that Olewe has been filing false tax returns using EFINs associated with stolen identities and W-2 information.[1] Kubwa's involvement with the scheme seems to flow from his association with Olewe and Otiende. Both Olewe and Otiende appear to run tax preparation businesses. Olewe runs EA Tax Services while Otiende runs A1 Income Tax Services. [Aff. at pg. 9–10, ¶ 30 & pg. 17, ¶ 75].

Notably, Kubwa listed both Olewe and Otiende as emergency contacts for his Texas driver's license. [*Id.* at pg. 16, ¶ 73]. Further, Kubwa's driver's license lists his address as 7623 Cook Rd., Houston Texas, which is the same address EA Tax Services has listed as a business address. [*Id.* at pg. 10, ¶ 31 & pg. 16, ¶ 73]. Kubwa and Olewe are further tied together through

---

[1] Kubwa admits that the search warrant affidavit establishes probable cause for Kubwa's co-defendants and their respective email addresses. [R. 49 at pg. 2].

communications via WhatsApp and email. On March 21, 2019, a search warrant was executed on a phone belonging to Olewe. [*Id*. at pg. 20, ¶ 92]. The search found WhatsApp messages between Kubwa and Olewe in which Kubwa sent the login information for an email address that has been linked to a successful phishing scam and a tax preparation service which has filed numerous returns using W-2 information garnered from the phishing scam. [*Id*. at pg. 20–21, ¶ 92]. The search also uncovered WhatsApp messages between Kubwa and Olewe in which Kubwa sent Olewe a picture of the Texas driver's license belonging to Krashanda Harrold to which Olewe replied with the phone number associated with Enrica Tax Services. [*Id*. at pg. 24, ¶ 108]. Importantly, Ms. Harrold's information was used to fraudulently obtain an EFIN which altogether filed ninety-four returns in 2017, several of which used W-2's from the same employers who fell prey to the phishing scam; notably, many of these W-2s were also used by Enrica Tax Services, a fraudulent tax preparation business linked to Olewe, to file false returns. [*Id*. at pg. 7–8, ¶ 20–23]. Lastly, the search uncovered regular communications between Kubwa and Olewe using the email address at bar. [*Id*. at pg. 23, ¶ 102].

Otiende filed a 2017 income tax return which was prepared by Olewe; notably, the return listed two daughters as dependents with the last name Kubwa. [*Id*. at pg. 16–17, ¶ 74]. Further, IRS records indicate that A1 Tax Services is owned by Otiende but lists Kubwa's personal email address, the email address at bar, as the business email on file. [*Id*. at pg. 17, ¶ 75]. Altogether, A1 Income Tax Services prepared and submitted fifty-six tax returns to the IRS in 2015. [*Id.* at ¶ 76]. Olewe prepared and submitted tax returns for thirty-one of the same individuals in 2018. [*Id*. at ¶ 77].

**B. The Michael Eissen tip.**

On March 2, 2015, IRS Special Agent Michael Greer interviewed a man named Michael Essien, a Wells Fargo employee who was ultimately fired for opening bank accounts using false

IDs. [*Id*. at pg. 17, ¶ 78]. Essien told Special Agent Greer that a tax preparation office operated by a man named Pastory Mandori had used the identity of a man named Michael Mudasia to fraudulently obtain an EFIN which was used to file false returns for "bums" in order to obtain large refunds. [*Id*]. IRS records indicate that Mudasia was issued an EFIN in 2010, and from 2011 to 2015 filed over 940 returns claiming refunds totaling over $3,200,000. [*Id* at pg. 16, ¶ 72]. Essien, went on to explain that he had met Mandori while working at Wells Fargo and that Mandori would call Essien with instructions to open accounts for tax return preparation customers. [*Id*. at pg. 17, ¶ 78]. Essien would then provide Mandori with debit cards, which would enable Mandori to withdraw funds from his tax preparation customers' accounts. [*Id*. at pg. 18, ¶ 79].

On October 6, 2015, Essien forwarded an email sent to him by Mandori (under the guise of Michael Mudasia). Essien indicated that Mandori drafted the email to help Essien with a criminal case he was facing in Fort Bend County. [*Id*. at pg. 18, ¶ 79]. The email indicated that:

> Hillary [K]ubwa phone number 7134441985 he owns A1 Tax Services . . . [h]e is the one financing the [EFIN] number to run the tax scam. [H]e [is] under [a] boss name[ed] [N]dochi he is the one who does all the dirty work [,] they have people who can cash the checks for them so they charge other scammers [for] cashing their checks.

[*Id*.]. The email then lists several names of alleged associates of Kubwa. [*Id*.]. Notably, the email later stated that the meeting place for the scammers was A1 Tax Services. [*Id*. at pg. 19, ¶ 79].

**C. Conclusion.**

Altogether, the affidavit ties Kubwa to the tax scheme in multiple ways. Most prominent is his association with Olewe. Kubwa and Olewe have been shown to have sent incriminating messages between them using WhatsApp and have regularly communicated using the email address at bar. Further, Kubwa has listed Olewe as an emergency contact on his driver's license. Curiously, both Olewe and Kubwa have listed the same address as being their own on various

forms. This connection is further strengthened when one considers the relationship between Otiende's tax preparation business, A1 Tax Services, and Kubwa. Otiende listed the email address at bar, which Kubwa has used personally to communicate with Olewe, as its business email address. Further, Otiende has two dependent children with the last name Kubwa, suggesting a connection between Otiende and Kubwa. Kubwa's connection to the tax scheme is strengthened by the Essien tip, which explicitly named Kubwa as being the owner of A1 Tax Services and the financier of the tax scam. Notably, Olewe has filed tax returns for many of the same individuals that A1 Tax Services has. Taken together, it seems likely that there is a nexus between Kubwa's email and the alleged tax fraud scheme given the multiplicity of connections between Kubwa, Olewe, the email address at bar, and the various fraudulent ventures detailed in the affidavit.

The Defendant argues that the search warrant affidavit did not establish probable cause. [R. 49 at pg. 3]. Specifically, Defendant argues that there is not a sufficient link between the email address at bar and the fraud alleged in the search warrant affidavit; therefore, the evidence gain from the search of the email address should be suppressed. [*Id*. at pg. 8]. In contrast, the United States argues that there is ample evidence laid out in the search warrant affidavit linking the email address at bar to the alleged tax scam, and therefore, there is sufficient evidence to support a finding of probable cause. [R. 59 at pg. 9–11].

## ANALYSIS

### I. PROBABLE CAUSE

Under the totality of the circumstances and giving proper deference to the determination of the issuing judicial officer, the search warrant affidavit provided probable cause within its four corners for the issuance of a search warrant for the Defendant's email address. The existence of probable cause to support a search warrant is evaluated under a totality of the circumstances approach. *Illinois v. Gates*, 462 U.S. 213 (1983). The approach espoused by the *Gates* court is not

overly-technical, but rather,

> the Fourth Amendment requires the issuing magistrate simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (internal punctuation and citation omitted). Further, a judicial officer's finding of probable cause should be afforded great deference by the reviewing court. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013). In order to establish probable cause, a warrant affidavit must establish "a nexus between the place searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998). The nexus must be such that it creates a "substantial basis to believe that the things to be seized will be found in the place searched." *Ellizon v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010.). Importantly, "[w]ith respect to electronically stored information, the Sixth Circuit has repeatedly found that searches of computers and other forms of electronic media create "practical difficulties" that require a flexible approach to the application of the particularity requirement." *United States v. Ayache*, No. 3:13-cr-153, 2014 U.S. Dist LEXIS 30648, at *5 (M.D. Tenn. Mar. 10, 2014). This flexibility has been extended to the search of email accounts so long as the search is supported by adequate probable cause. *Ayache* at *6. Ultimately, "[a] search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Guest v. Leis*, 255 F.3d 325, 337 (6th Cir. 2001).

      The Defendant argues that "the search warrant affidavit lacks sufficient particularized facts linking Kubwa to any crime, and, more importantly, contains no facts establishing that the evidence of any crime would be found within his email account." [R. 49 at pg. 2]. To support this argument, the Defendant relies on two cases: *United States v. Abernathy*, 843 F.3d 243 (6th Cir.

2016) and *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006). [R. 49 at pg. 4]. In both cases, the Sixth Circuit held that warrants lacked probable cause to justify searches of the defendants' residences. Specifically, the *Abernathy* court reasoned that drug paraphernalia found in the defendant's trash was too attenuated from his residence to justify a warrant for the search of the residence. *Abernathy*, at 251. Meanwhile, the *McPhearson* court reasoned that despite a defendant being arrested outside of his home for assault while in possession of crack cocaine, there was not a sufficient connection between the possession of the drugs and potential criminal activity in the defendant's home to establish probable cause. *McPhearson*, at 526.

However, the situation at bar is distinguishable from the facts of both *Abernathy* and *McPhearson*. Both cases stand for the proposition that probable cause to search a residence cannot be sustained *solely* on the presence of a small quantity of drugs found outside of the home. In the aforementioned cases, the probable cause analysis was based *solely* on the presence of a small quantity of drugs. In contrast, the search warrant affidavit tying the defendant's email to the tax fraud scheme is multifaceted. *See United States v. Talley*, 692 F. App'x 219, 222 (6th Cir. 2017) (finding the *Abernathy* court's analysis unpersuasive when multiple facts in the warrant affidavit support probable cause). Here, the nexus establishing probable cause to search the Defendant's email account is likewise based on multiple facts and not a sole piece of evidence. For example, Kubwa shared incriminating WhatsApp exchanges with co-defendant Olewe, in which they exchanged the image of a driver's license of a woman whose identity is known to have been used by Olewe to obtain a fraudulent EFIN and file false returns. [Aff. at pg. 24, ¶ 108]. The messages also show an exchange of login information for an email address which is also associated with a fraudulent EFIN and tax preparation business which used W-2 information obtained through a phishing scam. [*Id*. at pg. 20–21, ¶ 92]. Further, the affidavit establishes that Kubwa and Olewe communicated with each other using the email address at bar. [*Id*. at pg. 23, ¶ 102]. Lastly, the

affidavit detailed an informant tip linking Kubwa to a tax fraud scheme and explicitly tying him to A1 Tax Services, Otiende's tax preparation business. [*Id*. a pg. 17–19, ¶ 78–79]. The affiant stated that based on his knowledge, training, and experience, that it is common for individuals to use email accounts to communicate both for personal and business matters and to store files and information on those accounts. [*Id.* at pg. 1, ¶ 1]. As the Defendant has already acknowledged that the warrant affidavit established probable cause to search Olewe's email, it stands to reason that the multiplicity of evidence linking Kubwa to Olewe represents the requisite nexus between the Defendant's email account and evidence of the Defendant's participation in the alleged tax fraud scheme to support a finding of probable cause. [R. 49 at pg. 2].

In sum, under the totality of the circumstances, Magistrate Judge Stinnett correctly made a "common-sense" decision that given all of the evidence set before him that there was a fair probability that evidence would be found in a search of Defendant's email account. There are multiple pieces of evidence tying the Defendant to the alleged tax scheme and communications between the co-defendants utilizing the Defendant's email address. Thus, it stands to reason that there is a likelihood that a search of the Defendant's email address will uncover evidence related to the purported tax scheme. Accordingly, there is a sufficient nexus between Defendant's email account and the purported tax scheme to support a finding of probable cause.

## II. *LEON* GOOD FAITH EXCEPTION

The Defendant asserts that the *Leon* good faith exception does not apply to the search warrant at issue. The Defendant supports this assertion with two distinct arguments: first, the Defendant argues that pursuant to the holding in *United States v. Rice* the *Leon* good faith exception does not apply to warrants improperly issued under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* (hereinafter "Title III"); second, the Defendant argues that the good faith exception does not apply because the search warrant

lacked the required nexus to support a finding of probable cause as the warrant is bare bones. [R. 64]. The arguments will be addressed in turn.

### A. Title III does not apply to the case at bar.

Title III details the procedure and limitations of the government's power to obtain information from citizens without their consent through the use of wiretaps. 18 U.S.C. § 2150 *et seq*. Defendant relies on *United States v. Rice*, 478 F.3d 704 (6th Cir. 2007) to argue that the *Leon* good faith exception does not apply to the case at bar. In *Rice,* the Sixth Circuit held that *Leon* is not applicable to warrants improperly issued under Title III. To support this argument, Defendant asserts Google provides an electronic communication service pursuant to the definition provided in 18 U.S.C. § 2510(15) and that Defendant's email address clearly falls into this definition; therefore, this Court should apply the standard set forth in *Rice* and disregard the *Leon* good faith exception. Here, Kubwa seems to be implying that Title III's definitions are applicable to the dispute at hand. However, this Court notes that Title III and the litigation in *Rice* concerns the government's use of wiretaps. As there was not a wiretap used in the case at bar, and the Defendant has cited no authority applying the holding in *Rice* to situations not involving a wire-tap, the Defendant's arguments regarding the application of Title III and *Rice* are without merit.

### B. The Leon exception applies to the case at bar.

The *Leon* good faith exception permits the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). The Defendant argues that the *Leon* good faith exception should not apply because there was not a sufficient investigation related to the Defendant's email address, thus making the search warrant "bare-bones." [R. 64 at pg. 8–9]. Conversely, the United States argues that the *Leon* good faith exception should apply if the Court finds the affidavit did not establish probable cause. [R. 59 at pg. 11]. Although this Court finds that the warrant affidavit was

sufficient to establish probable cause, the Court agrees with the United States that, absent a valid finding of probable cause, the warrant was relied on in good faith. Therefore, the warrant would be subject to the *Leon* good faith exception.

In order for the good faith exception to apply, the affidavit must contain a sufficient nexus between the crime and the place to be searched. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016). Further, the affidavit cannot be so lacking in probable cause that belief in its existence is objectively unreasonable. *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013). Finally, the issuing judge must not have been mislead by false information, nor can he fail to act in a detached or neutral fashion. *United States v. Leon*, 468 U.S. 897, 923 (1984).

Here, the affidavit contained detailed and specific information regarding the alleged tax scheme and established a clear nexus between that alleged illegal activity and the Defendant's email address. The warrant affidavit contained information linking the Defendant and one of his co-defendants communicating with each other regarding their tax scheme and criminal activities associated with it along with evidence that they communicated using the email address at bar. Further, the affidavit is not so devoid of probable cause that finding its existence is objectively unreasonable. Affidavits that are so lacking in indicia of probable cause contain only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and a basis of knowledge. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). The standard by which an affidavit is judged for purposes of good faith is less demanding than the threshold to prove the existence of probable cause. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). In this case, the affidavit was not so devoid of probable cause that its existence was objectively unreasonable. As discussed above, the affiant stated specific information linking the subject email address to the tax fraud scheme alleged carried out by the codefendants. Lastly, there is no indication or allegation that the issuing judicial officer was

mislead by false information. Thus, by all accounts, the officers who executed the warrant relied in good faith. Therefore, the Defendant's motion to suppress should be denied.

## CONCLUSION

There is sufficient evidence found within the four corners of the search warrant affidavit to establish probable cause to search the Defendant's email. The Defendant's actions and exchanges with his co-defendants have shown that there is a nexus between his email account and the potential tax scheme. Further, even if the undersigned were to have found that the search warrant affidavit did not establish probable cause to search the Defendant's email account, the evidence would still not be suppressed as the *Leon* good faith exception applies. Accordingly, **IT IS RECOMMENDED** that, the Defendant's Motion to Suppress, [R, 49], be **DENIED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Signed July 13, 2022.



Signed By:

*Edward B. Atkins*  *EBA*

**United States Magistrate Judge**